UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ERIC M. GORDON,

     Plaintiff,
v.
               **DECISION AND ORDER**
               14-CV-324S
PAROLE OFFICER SEMRUG,
PAROLE OFFICER HIMMELSBOCH,
PAROLE SPECIALIST CYNTHIA MOONEY,

     Defendants.

## I. INTRODUCTION

In this action under 42 U.S.C. § 1983, *pro se* Plaintiff Eric M. Gordon brings suit against Defendants Martin Semrau and Melissa Himmelsbach,[1] who served as Plaintiff's parole officers, and Defendant Cynthia Mooney, who served as the Parole Specialist at a hearing where it was determined that Plaintiff had violated his parole, alleging that Defendants violated his constitutional rights by designating him as a discretionary sex offender.[2] Presently before this Court is Plaintiff's Motion for Summary Judgment and Defendants' motion for the same relief. For the following reasons, Defendants' motion is granted and Plaintiff's motion is denied.

## II. BACKGROUND[3]

This suit was initially filed on April 29, 2014. At that time, Plaintiff was an inmate of the Franklin Correctional Facility, serving out the remainder of his sentence for

---
[1] The caption and complaint in this action appear to misspell Defendant Semrau's name as "Semrug" and Himmelsbach's name as "Himmelsboch".
[2] Plaintiff's Complaint initially included claims against the New York Department of Parole, Andrea A. Evans, and Channel Four News. (Docket No. 1). These defendants were dismissed with prejudice on October 24, 2014 (Docket No. 11).
[3] The facts are derived principally from the parties' Local Rule 56 Statements, the parties' declarations, and exhibits attached thereto. Only the facts necessary to the resolution of the motion are recounted below and are undisputed unless otherwise stated.

1

violation of the terms of his parole. Defendants Semrau, Himmelsbach, and Mooney were at all relevant times employed by the New York State Department of Corrections and Community Supervision ("DOCCS") or its predecessor the Department of Parole, which has now merged with DOCCS.

Plaintiff was initially convicted in 2005, when he pled guilty in Erie County Supreme Court to second degree burglary, criminal possession of a controlled substance, and resisting arrest. The victim of the burglary alleged that, during the commission of the crime, Plaintiff stated he would not leave her home unless either she or her seven-year-old daughter had sex with him. Plaintiff was sentenced to a determinate sentence of five years in custody and an additional five years of supervised release.

Plaintiff was initially released on parole in August 2009 and placed under the supervision of Parole Officer Amato, who is not a party to this suit. Prior to Plaintiff's release from custody, he was designated as a discretionary sex offender ("DSO"), a designation given in New York State to those "whose instant offense is not a sex crime, but whose criminal history includes a prior sex offense conviction or a crime the commission of which had a sexual component." (Himmelsbach Dep. 3:11; Docket No. 66.) The designation is not public, it is an internal classification that defines the conditions to which a parolee is subject during the period of supervised release. A DSO is subject to some of the same parole conditions as a sex offender, which may include sex offender treatment or prohibitions on interacting with minors, but does not require the parolee to register with the State Sex Offender Registry. The designation is made following recommendation by a parole officer and approval by a supervisor.

Defendants state that Plaintiff was designated as a DSO because of the statement that he made during the burglary that he would not leave the victim's home unless either she or her seven-year-old daughter had sex with him. It appears that the designation was recommended by Parole Officer Amato, though it is not clear which supervisor approved Officer Amato's recommendation. Officer Amato met with Plaintiff on August 24, 2009, shortly after his release. At that time, Plaintiff signed conditions of parole indicating that, among other conditions of parole, he was required to participate and complete sex offender counseling. Plaintiff does not recall signing the conditions of parole, and disputes that Officer Amato told him that he would be supervised as a DSO. Officer Amato supervised Plaintiff for only a short time because, three days after he was released, Plaintiff violated his curfew and returned to custody after pleading guilty to a parole violation.

Plaintiff was next released from custody on August 26, 2010, and placed under the supervision of Officer Semrau. Officer Semrau "submitted rationales for the special conditions associated with" Plaintiff—which would appear to mean that he supported Plaintiff's continued designation as a DSO. (Semrau Decl. ¶ 19; Docket No. 67-4.) Plaintiff states that he first learned of the sex offender conditions from Officer Semrau, that he objected to the conditions, and that he was told he would "have to register in a kind of way that it would only be provided to local police officers." (Gordon Dep. 20:13-18, Docket No. 67). Officer Semrau advised Plaintiff that he could initiate an Article 78 proceeding if he wanted to challenge the designation. Despite his objections, Plaintiff signed off on the conditions and did not file any challenge at that time.

3

Plaintiff was not compliant with the conditions of his parole. Officer Semrau often had difficulty locating the Plaintiff, and he failed to attend the requisite sex offender counseling. On November 12, 2010, after DOCCS officers were unable to locate Plaintiff for several weeks, an absconder warrant was issued. Plaintiff alleges that, on February 3, 2011, after he had absconded to Nebraska, he saw a television broadcast on "Channel 4" that said he "was wanted by the New York Department of Parole, that [he] was a sex offender wanted by . . . the State Department of Parole, someone who committed a sex offense . . . ." (Gordon Dep. 62:20-23, 63:1-7, Docket No. 67). Plaintiff does not know the source of the information provided to Channel 4. On December 13, 2011, Plaintiff was taken into custody in Nebraska after a traffic stop and extradited back to New York shortly after. Plaintiff alleges that the extradition paperwork stated that his crime of conviction was rape, though the paperwork contradicts this. After Plaintiff was brought back to Buffalo, he was either found guilty or pled guilty to violating his parole and sentenced to fifteen months in custody.

Plaintiff was released on parole for the third and final time on June 6, 2013, under the supervision of Officer Himmelsbach. Prior to Plaintiff's release, Senior Parole Officer Susanna Mattingly recommended that Plaintiff be classified as a DSO, which was approved by the Bureau Chief. Officer Himmelsbach informed Plaintiff that he would be supervised as a DSO and also of several additional conditions, including a requirement that he avoid contact with Allison Coleman, a woman with whom Plaintiff had a prior relationship and a history of domestic violence. Officer Himmelsbach imposed a curfew of 8pm to 8am, a ban on driving, and a prohibition on going to bars. She also used a GPS to monitor Plaintiff's movements due to his history of violence and

the previous absconding incident. Plaintiff again protested the terms of his parole, but again signed off on them.

Plaintiff was no more compliant on his third attempt at parole than he had been during the two prior periods of release. On July 25, 2013, Officer Himmelsbach found Plaintiff speaking with Ms. Coleman in front of her home. Officer Himmelsbach also found an unapproved cell phone in Plaintiff's possession that revealed Plaintiff had been associating with children and visiting pornographic web sites in violation of the DSO-related conditions of his parole. Plaintiff was taken back into custody and charged with seventeen parole violations, including violating curfew on multiple occasions, being within 1000 feet of Ms. Coleman, being within 1000 feet of a minor, possession of an unapproved cell phone, and accessing pornographic sites on his cell phone.

Officer Mooney acted as the Parole Revocation Specialist who prosecuted Plaintiff for these violations at the Parole Revocation Hearing on October 2, 2013. Ms. Coleman testified at the hearing that she had known Plaintiff for many years, that he was at her residence, and that she knew he was not supposed to be at her residence. Officer Himmelsbach also testified at the hearing as to the conditions of Plaintiff's parole. Plaintiff was sentenced to "maxing out" his parole, meaning that he was sentenced to complete the remainder of his supervised release in custody.

Plaintiff commenced this § 1983 action in April 2014, while still in custody on the parole violations. Shortly after, on July 25, 2014, Plaintiff brought a *habeas corpus* proceeding in New York state court. See Matter of Gordon v. LaClair, 48 Misc. 3d 926, 16 N.Y.S.3d 371 (N.Y. Sup. Ct. 2015). The Franklin County Supreme Court acknowledged the possibility that the DSO designation may have implicated Plaintiff's

liberty interest, but dismissed Plaintiff's petition because it appeared that Plaintiff's parole was revoked primarily based on violations of parole that were unrelated to the DSO-specific conditions:

> The mere fact that [Plaintiff] may have been unlawfully designated a "discretionary sex offender" for parole supervision purposes does not, in and of itself or even when coupled with a parole condition directing his participation in an intrusive sex offender treatment program, mandate the judicial reversal of a subsequent final parole revocation determination in the absence of allegations/findings that the parole revocation determination was based solely upon the violation of the release condition requiring petitioner to participate in the sex offender treatment program.

Id. at 936.

Plaintiff was released in July 2015, having completed his term of parole. It is undisputed that, since his term is now complete, he is no longer designated as a DSO and is no longer subject to any condition of parole. It is also undisputed that Plaintiff was not made to register as a sex offender, and that he never attended sex offender counseling.

### III. **DISCUSSION**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the role of this Court "not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." Kaytor v. Elec. Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010). A fact is material where it "might affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute regarding a material fact is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

"[I]n reviewing all of the evidence to determine whether judgment as a matter of law is appropriate, 'the court must draw all reasonable inferences in favor of the nonmoving party.'" Kaytor, 609 F.3d at 545 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)) (emphasis removed). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." Rodriguez v. City of New York, 72 F.3d 1051, 1061 (2d Cir. 1995). "[S]ummary judgment is proper only when, . . . 'there can be but one reasonable conclusion as to the verdict.'" Kaytor, 609 F.3d at 545 (quoting Anderson, 477 U.S. at 250).

Further, this Court will "liberally construe pleadings and briefs submitted by *pro se* litigants, . . . reading such submissions 'to raise the strongest arguments they suggest.'" Bertin v. United States, 478 F.3d 489, 492 (2d Cir. 2007) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)) (internal citations omitted). "Nonetheless, '[p]roceeding *pro se* does not otherwise relieve a litigant of the usual requirements of summary judgment, and a *pro se* party's bald assertions, unsupported by evidence, are insufficient to overcome a motion for summary judgment.'" Rodriguez v. Ames, 224 F. Supp. 2d 555, 558-59 (W.D.N.Y. 2002) (quoting Rodriguez v. Hahn, 209 F. Supp. 2d 344, 348 (S.D.N.Y. 2002)).

Plaintiff claims that his designation as a DSO was a violation of his Constitutional rights, contending that he has never been convicted of a sex crime and therefore should

7

have received a hearing before the designation was imposed. He expressly limits his challenge to the designation itself, and not the conditions that accompanied it, stating:

> [T]his Complaint is not about the Department of Parole's authority or discretion to implement any parole supervised conditions. This Complaint . . . is specifically a challenge to what the Plaintiff truly believes to be an unconstitutional sex offender classification/ designation and notification of himself under the supervision of the Department of Parole.

(Complaint at p. 6; Docket No. 1.) Plaintiff characterizes his claims as Malicious Prosecution, Harassment, Illegal Search and Seizure, Equal Protection and Due Process, and brings suit under 42 U.S.C. § 1983 seeking monetary damages and injunctive relief. "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." Whalen v. County of Fulton, 126 F.3d 400, 405 (2d. Cir. 1997) (citing Eagleston v. Guido, 41 F.3d 865, 875-76 (2d Cir. 1994)).

## A. Statute of Limitations

The statute of limitations for Section 1983 actions arising out of constitutional wrongs in New York is three years. Eagleston, 41 F.3d at 871. In calculating this period, courts assume, pursuant to the "prison mailbox" rule, that a pleading is filed when it is given to prison officials. Houston v. Lack, 487 U.S. 266, 276, 108 S. Ct. 2379, 2385, 101 L. Ed. 2d 245 (1988); Nobel v. Kelly, 246 F.3d 93, 97 (2d Cir. 2001). In this case, Plaintiff's Complaint was notarized April 25, 2014, which will be considered the date it was given to prison officials. Accordingly, any claims that accrued before April 25, 2011 are time barred.

8

The Second Circuit has ruled that accrual of a Section 1983 claim occurs when the plaintiff "knows or has reason to know of the injury which is the basis of his action." See Singleton v. City of New York, 632 F.2d 185, 191 (2d Cir. 1980) *cert. denied*, 450 U.S. 920, 101 S. Ct. 1368, 67 L. Ed. 2d 347 (1981) (internal quotation omitted); see also Shomo v. City of New York, 579 F.3d 176, 181 (2d Cir. 2009) ("A Section 1983 claim ordinarily accrues when the plaintiff knows or has reason to know of the harm." (internal quotation omitted)). To the extent that Plaintiff seeks to argue that the "continuing violation" doctrine has tolled the statute of limitations, this Court finds that argument to be without merit.

Based on the facts presented by the parties, it appears that Plaintiff was designated as a DSO on three occasions, immediately prior to his release on parole in August 2009, August 2010, and June 2013. Plaintiff argues that he was not told of the DSO designation during his first parole in August 2009, and has not brought suit against Officer Amato, who made the recommendation for the initial designation, nor the unnamed supervisor who ultimately approve the initial designation. Plaintiff alleges that he became aware of the DSO designation in August 2010, when Officer Semrau took over his supervision. Plaintiff has stated that he seeks only to challenge the designation itself, and not the conditions associated with the designation.

The chief purpose of the continuing violation doctrine "is to protect the rights of plaintiffs where 'the earlier discrimination may only be recognized as actionable in the light of events that occurred later.'" Keddy v. Smith Barney, Inc., No. 96 Civ. 2177(DAB)(SEG), 2000 WL 193625, at *3 (S.D.N.Y Feb. 16, 2000) (quoting Hardin v. S.C. Johnson & Son, Inc., 167 F.3d 340, 344 (7th Cir. 1999), *cert. denied*, 528 U.S. 874,

120 S. Ct. 178, 145 L. Ed. 2d 150 (1999)). This rationale does not apply to the case at hand. Unlike the employment discrimination context, where this doctrine is often applied, Plaintiff here does not allege a series of individual acts that, when taken together, amount to a violation of constitutional rights. Instead, he cites the individual occurrences where he was designated as a DSO, each of which is akin to a "one time act with continued consequences," and which the Eleventh Circuit has held is not subject to the continuing violation doctrine. See Lovett v. Ray, 327 F.3d 1181, 1183 (11th Cir. 2003) ("The critical distinction in the continuing violation analysis is whether the plaintiff complains of the present consequence of a one time violation, which does not extend the limitations period, or the continuation of that violation into the present, which does." (internal quotation and punctuation omitted)); see also Munsch v. Evans, No. 11-CV-2271 JFB ETB, 2012 WL 528135, at *12-14 (E.D.N.Y. Feb. 17, 2012) ("the decision to impose conditions to plaintiff's lifetime supervision was a 'one time act with continued consequences'" therefore continuing violation doctrine did not apply) (quoting Lovett, 327 F.3d at 1183)).

Because the continuing violation doctrine is inapplicable, there is no tolling of the statute of limitations. Accordingly, Plaintiff's claims that accrued before April 25, 2011, including his claim against Officer Semrau, must be dismissed as time-barred.[4]

---

[4] Plaintiff also alleges that, while he had absconded from parole to Nebraska on February 3, 2011, he saw a television broadcast on "Channel 4" stating he was a sex offender wanted by the State Department of Parole. Any claim accruing from the alleged broadcast is time-barred. Further, any claims arising from the broadcast or from Plaintiff's allegations that his extradition papers said he was convicted of "rape" must also be dismissed because Plaintiff states that he does not know the source of the information in these alleged incidents, and the Defendants state that they were not the source. See Rodriguez, 224 F. Supp. 2d at 558 ("a *pro se* party's bald assertions, unsupported by evidence, are insufficient to overcome a motion for summary judgment").

**B.    Monetary Damages**

Defendants argue that the designation in this case was not a violation of due process because the DSO designation is private and therefore not the equivalent of a Sex Offender designation, which requires registration. Defendants further argue that, even if it were a violation, they would be shielded from suit by qualified immunity. "Qualified immunity protects public officials from liability for civil damages 'unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct.'" Singleton v. Doe, 210 F. Supp. 3d 359, 371 (E.D.N.Y. 2016) (quoting Taylor v. Barkes, 135 S. Ct. 2042, 2044, 192 L. Ed. 78 (2015)). "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" Mullenix v. Luna, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015) (per curiam) (quoting Reichele v. Howards, 566 U.S. 658, 659, 132 S. Ct. 2088, 182 L. Ed. 985 (2012)). "In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" Reichele, 566 U.S. at 664 (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011)). "Only Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established." Moore v. Vega, 371 F.3d 110, 114 (2d Cir. 2004).

As recently noted by the Eastern District: "The Court is unaware of any Second Circuit federal court determination that addresses a parolee's liberty interest in being free from a discretionary sex offender designation." See Singleton, 210 F. Supp. 3d at 371 (finding qualified immunity applied in parolee's § 1983 suit arising from DSO designation). The Second Circuit has held, in other contexts, that "damage to one's

11

reputation is not 'by itself sufficient to invoke the procedural protection of the Due Process Clause;'" "'stigma plus' is required to establish a constitutional deprivation." Valmonte v. Bane, 18 F.3d 992, 999 (2d Cir. 1994) (quoting Paul v. Davis, 424 U.S. 693, 701, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976)).

> To establish a "stigma plus" claim, a plaintiff must show (1) "the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false," and (2) "a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights."

Vega v. Lantz, 596 F.3d 77, 81 (2d Cir. 2010) (quoting Sadallah v. City of Utica, 383 F.3d 34, 38 (2d Cir. 2004)).

Such a "stigma plus" claim may arise where parolees are forced to comply with certain registry and notification requirements of New York's Sex Offender Registration Act. See, e.g., Doe v. Pataki, 3 F. Supp. 2d 456, 463 (S.D.N.Y. 1998); People v. David W., 95 N.Y.2d 130, 139, 711 N.Y.S.2d 134, 733 N.E.2d 206 (N.Y. 2000). But although a prisoner or parolee may have a liberty interest in avoiding the stigma and tangible impairment associated with a registered sex offender designation, neither the Second Circuit nor the Supreme Court has made clear that the interest extends to a DSO designation. "Thus, Plaintiff's right to receive due process prior to being designated a discretionary sex offender is not clearly established, and to the extent that Plaintiff had such an interest upon which Defendants wrongly infringed, Plaintiff cannot recover money damages from Defendants because they are entitled to qualified immunity." Singleton, 210 F. Supp. 3d at 371 (citing Taylor, 135 S. Ct. at 2044; Allen v. Coughlin, 64 F.3d 77, 81 (2d Cir. 1995)).

## C. Injunctive Relief

Plaintiff also seeks injunctive relief, in the form of a "name clearing." The subject matter jurisdiction of this Court is limited "to disputes involving 'live cases and controversies.'" U.S. Const. art. III; County of Suffolk v. Sebelius, 605 F.3d 135, 140 (2d Cir. 2010). "Mootness . . . concerns when and whether a case is live." County of Suffolk, 605 F.3d at 140 (internal quotations omitted). The general rule is that "courts' subject matter jurisdiction ceases when 'an event occurs during the course of the proceedings or on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party.'" Id. (quoting United States v. Quattrone, 402 F.3d 304, 308 (2d Cir. 2005)).

In the present case, Plaintiff's request for injunctive relief is moot. It is undisputed that Plaintiff is no longer on parole, and is therefore no longer subject to the conditions accompanying the DSO designation. Making every inference in Plaintiff's favor, he has failed to raise an issue of material fact as to whether he continues to suffer an injury arising from the DSO designation, which the credible evidence shows to have been a status associated solely with the conditions of his parole. Therefore, injunctive relief is not available.[5] Having found the injunctive claims moot, this Court also finds Plaintiff's motion for a name clearing hearing to be moot.[6]

---

[5] This Court further notes that Plaintiff has not shown that he was denied due process of law. "[T]he availability of adequate process defeats a stigma-plus claim." Hughes v. City of N.Y., 197 F. Supp. 3d 467, 477-78 (E.D.N.Y. 2016) (denying "stigma plus" claim where plaintiff failed to pursue an Article 78 proceeding), aff'd in relevant part, No. 16-2557, 2017 WL 685803 (2d Cir. Feb. 21, 2017) (quoting Segal v. City of N.Y., 459 F.3d 207, 213 (2d Cir. 2006)). Plaintiff did not pursue an Article 78 proceeding, which the Second Circuit has repeatedly held "provides the requisite post-deprivation process." Anemone v. Metro. Transp. Auth., 629 F.3d 97, 121 (2d Cir. 2011). An Article 78 proceeding must be commenced "within four months after the determination to be reviewed becomes final and binding . . . ." N.Y. C.P.L.R. 217(1). Plaintiff failed to challenge his designation as a DSO by Article 78, instead filing a *habeas corpus* petition on July 25, 2014, more than a year after his third and final designation as a DSO. In denying the petition, the court noted that, if the designation was "a violation of his constitutional due process rights,

13

## IV. CONCLUSION

Because Plaintiff's claims for compensatory damages are barred by Defendants' qualified immunity and his claims for injunctive relief are moot, Defendants' Motion for Summary Judgment is granted and the claims against them are dismissed. Plaintiff's motions are denied.

## V. ORDER

IT HEREBY IS ORDERED, that Plaintiff's Motion for Summary Judgment (Docket No. 62) is DENIED;

FURTHER, that Defendants' Motion for Summary Judgment (Docket No. 66) is GRANTED;

FURTHER, that Plaintiff's Motion for a Hearing (Docket No. 61) is DENIED;

FURTHER, that the Clerk of Court is directed to close this case.

SO ORDERED.

Dated: May 23, 2017
        Buffalo, New York

                          /s/William M. Skretny
                          WILLIAM M. SKRETNY
                        United States District Court Judge

---

the proper remedy (preparole violation) would be a court order striking the offending parole condition." Matter of Gordon, 48 Misc. 3d at 933. Accordingly, because Plaintiff failed to avail himself of the process available, he was not denied due process.

[6] Further, this Court finds no basis for Plaintiff's claims under the Fourth, Fifth, and Sixth Amendments. See Barnett v. Carberry, 420 Fed. App'x 67, 69 (2d Cir. 2011) ("The Fourth Amendment safeguards privacy and personal security only against searches or seizures, and not conduct outside of a governmental investigation of a violation of criminal law or other statutory or regulatory law."); Dutkiewicz v. Hyjek, 135 Fed. App' 482, 484 (2d Cir. 2005) ("the Sixth Amendment . . . applies only to criminal defendants"); Cassidy v. Scoppetta, 365 F. Supp. 2d 283, 286 (E.D.N.Y. 2005) ("The Fifth Amendment governs the conduct of the federal government and federal employees, and does not regulate the activities of state officials or state actors." (internal quotation and punctuation omitted)).